## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

ABNER MARTINEZ RINCON,

               Petitioner,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.,

           Respondents.

CIVIL ACTION NO.: 5:24-cv-12

### REPORT AND RECOMMENDATION

Petitioner Abner Rincon ("Rincon"), who is currently housed at the Folkston Immigration and Customs Enforcement ("ICE") Processing Center in Folkston, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus.  Doc. 1.  Respondent filed a Motion to Dismiss, and Rincon filed a Response.  Docs. 11, 15.  For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondents' Motion to Dismiss, **DENY** Rincon's § 2241 Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Rincon *in forma pauperis* status on appeal.  Rincon also filed a Motion for Summary Judgment, to which Respondents responded, docs. 17, 19, and I **RECOMMEND** the Court **DENY** Rincon's Motion.

### BACKGROUND

Rincon is a native and citizen of Mexico and, in 1997, he became a lawful permanent resident in the United States by marriage.  Doc. 11 at 2.  In 1992, Rincon was convicted in a state court of falsifying proof of insurance, driving with improper license, and driving without insurance.  In 1999, Rincon was arrested for domestic violence, and this charged was dismissed.

In 2002, Rincon was charged with unlawful conduct against a minor, and this charge was nolle prossed because the prosecutor could not locate the victim.  Id.  In September 2012, Rincon was convicted in a federal court of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and was originally sentenced to 168 months' imprisonment, which was later reduced to 135 months.  Id. at 2–3.

The Department of Homeland Security ("DHS") issued a notice to appear on June 14, 2021, charging Rincon as removable under 8 U.S.C. § 1227(a)(2)(A)(ii) of the Immigration and Naturalization Act ("INA") for being convicted of an aggravated felony, and this notice was amended to reflect the "proper date of adjustment (September 29, 1997)" and Rincon's conviction was for conspiracy.  Id. at 3.  Rincon has been under mandatory detention under 8 U.S.C. § 1226(c) at the ICE facility since June 17, 2021.  Id. at 1–2.

Rincon, since the beginning of removal proceedings before an immigration judge, has "refused to cooperate, prevented his immigration proceedings from progressing, and was belligerent."[1]  Id. at 3.  In his first two master calendar, or status conference, hearings occurring in the two-month period after Rincon's arrival at the Folkston ICE facility, Rincon would not state his name or answer questions and talked over the immigration judge.  The immigration judge reset the September 2021 master case hearing for a mental competency hearing, which was held six weeks later and at which the immigration judge determined Plaintiff could not represent

---

[1]    Respondents documented Rincon's proceedings and behavior over the course of nine pages of their Motion to Dismiss.  Doc. 11 at 3–11.  The Court will not recount this entirety of this account.  Instead, the Court will offer a brief summary of events and relies on Respondents' account and supporting documentation as accurately depicting the removal proceedings and events.  Id.; Doc. 11-1 at 3–5, 63–69, 72–77, 79–181 (transcripts of 10 proceedings where Rincon refused to participate, including answering questions as simple as what his name is), 261–66 (order of removal after numerous hearings, appointment of representative, attempts for mental health evaluation, and remand by Board of Immigration Appeals ("BIA")), 304–07 (BIA's June 6, 2024 order administratively closing Rincon's proceedings on appeal after remand).

himself.  Id.  Since November 2021, Rincon has had a representative during his removal proceedings, though he has not been cooperative with his representative or consented to undergo a mental health evaluation.  Id. at 4–6.

Rincon has had other hearings but was uncooperative and combative during those proceedings as well.  Id. at 4–7.  The immigration judge ordered Rincon removed to Mexico at the end of the March 31, 2022 hearing.  Id. at 7.  The Board of Immigration Appeals ("BIA") remanded the case for the immigration judge to further develop the factual record and to determine whether additional safeguards "short of termination could be implemented to ensure" Rincon receives a full and fair hearing.  Id.  Rincon refused to cooperate with DHS's attempt to get more facts through a sworn statement.  DHS submitted records from Rincon's underlying federal conviction, which revealed Rincon was "coherent, respectful, and contrite[]" during the criminal sentencing hearing.  Id. at 8.

The immigration judge attempted to have one more master calendar hearing in early 2023, and Rincon again was uncooperative.  The immigration judge noted Rincon's lack of cooperation extended his detention and all other options, absent his cooperation, had been exhausted.  Id. at 9.  The immigration judge again ordered Rincon removed and noted the two viable safeguards for Rincon (the appointment of a representative and ample opportunities for the parties to work together and Rincon cooperating with counsel) had been tried and were unsuccessful.  Id. at 10–11.  On appeal, the BIA decided to administratively close Rincon's case because, despite the immigration judge's best efforts, Rincon was not able to participate in his proceedings in a manner that would comport with his statutory and due process rights.  Id. at 11.  Once the removal order becomes final, Respondents anticipate no impediments to Rincon's removal to Mexico.  Id. at 11–12.

In his Petition, Rincon contends his due process rights have been violated based on the length of his post-removal detention.  Doc. 1 at 6–7.  Rincon requests this Court order Respondents to immediately release him from custody.  Id. at 7.

Respondents assert Rincon's detention is "constitutionally reasonable and statutorily authorized."  Doc. 11 at 12.  However, Respondents recognize courts, such as this Court, have allowed detainees to bring as-applied due process challenges to mandatory detention under § 1226(c) that could entitle detainees to a bond hearing before an immigration judge.  Id.  Respondents state, even if the Court considers an as-applied challenge, Rincon is not entitled to a hearing or to his requested relief.  Id. at 13–14.

## DISCUSSION

### I.    The Sopo Factors Do Not Favor Rincon

Rincon contends a statute permitting indefinite detention raises serious constitutional concerns, particularly under the due process clause.  Doc. 1 at 7.  Rincon states he has been detained since February 24, 2023, the date of the immigration judge's second removal order, and his indefinite detention is unlawful.  Id. at 8.  Respondent states Rincon has not met his burden of showing his detention violates his due process rights.  Doc. 11 at 12–17.

Section 1226 of Title 8 of the United States Code governs detention of certain aliens during removal proceedings.  Jennings v. Rodriguez, 583 U.S. 281, 288 (2018).  Section 1226(a) sets out the default rule, which permits, but does not require, the Attorney General to detain an individual while removal proceedings are ongoing.  Id.  Section 1226(c), however, "carves out a statutory category of aliens who may *not* be released under § 1226(a)."  Id. (emphasis in original).  Specifically, § 1226(c) provides the Attorney General "shall take into custody any alien" who falls into certain categories of criminal offenses.  Thus, § 1226(a) provides for

discretionary detention for aliens until removal proceedings are complete (as long as certain conditions are met), but § 1226(c) eliminates that discretion and imposes mandatory detention for certain aliens, in particular aliens who committed offenses involving aggravated felonies. Section 1226(c) does not on its face set a time limit on the length of detention but, instead, requires aliens be held until a final removal decision has been made.

> In fact, by allowing aliens to be released "only if" the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute. And together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope must continue "pending a decision on whether the alien is to be removed from the United States."

Id. at 303 (quoting § 1226(a)).

The record in this case demonstrates Rincon is subject to mandatory detention under § 1226(c) due to his conviction for conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine. Doc. 11-1 at 14–15. The immigration judge attempted several times to have proceedings with Rincon but could not do so based on Rincon's lack of cooperation. Doc. 11 at 3–10 (detailing 10 hearings or proceedings the immigration judge tried to conduct); Doc. 11-1 at 3–5 (same). On February 24, 2023, the immigration judge ordered Rincon removed to Mexico for the second time. Doc. 11-1 at 5, 261–66. On May 16, 2024, the BIA administratively closed Rincon's case after he appealed the removal order, and DHS intended to file an emergency motion for reconsideration/remand with the BIA before June 17, 2024. Id. at 5.

To the extent Rincon asserts a facial due process challenge based on the length of his detention (i.e., a challenge to the statutory framework permitting his detention in this case), that challenge fails as a matter of law, as the Supreme Court has explicitly rejected any facial constitutional challenge based the duration or indefiniteness of detention under § 1226(a) and (c).

Jennings, 583 U.S. at 296–314.  Furthermore, to the extent Rincon seeks to challenge any

discretionary decision by an immigration judge related to his detention, he cannot do so here or

at this time, given the limits of §§ 1226(e) and 1252(b)(9).[2]  Id.

However, Rincon challenges the length of detention as violative of his right to procedural

due process.  It is well established aliens present in the United States are entitled to Fifth

Amendment due process protections in deportation proceedings.  Reno v. Flores, 507 U.S. 292,

306 (1993).  The United States Supreme Court has also recognized, however, "detention during

deportation proceedings [is] a constitutionally valid aspect of the deportation process."  Demore

---

[2]    The Attorney General may detain the alien or release the alien on bond or conditional parole.
8 U.S.C. § 1226(a).  In addition,

> The Attorney General's discretionary judgment regarding the application of [§ 1226]
> shall not be subject to review.  No court may set aside any action or decision by the
> Attorney General under this section regarding the detention or release of any alien or the
> grant, revocation, or denial of bond or parole.

28 U.S.C. § 1226(e).  In other words, "§ 1226(e) precludes an alien from 'challeng[ing] a 'discretionary
judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his
detention or release.'"  Jennings v. Rodriguez, 583 U.S. 281, 295 (2018) (quoting Demore v. Kim, 538
U.S. 510, 516 (2003)).  In cases where an alien is detained, he can seek review of that detention with DHS
and then by an immigration judge and can "secure his release if he can convince the officer or
immigration judge that he poses no flight risk and no danger to the community."  Nielsen v. Preap, 586
U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 236.1(c)(8), (d)(1), 1003.19(a), 1236.1(d); then citing Matter
of Guerra, 24 I. & N. Dec. 37 (BIA 2006))).

"Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the
Attorney General to issue warrants for their arrest and detention pending removal proceedings.  Section
1226(a) also permits the Attorney General to release those aliens on bond, '[e]xcept as provided in
subsection (c) of this section.'"  Jennings, 583 U.S. at 281.  Section 1226(c), in turn, states the Attorney
General "shall take into custody any alien" who falls into one of the enumerated categories involving
criminal offenses and terrorist activities.  8 U.S.C. § 1226(c)(1).  Section 1226(c) specifies the Attorney
General "may release" one of those aliens "only if the Attorney General decides" both doing so is
necessary for witness-protection purposes and the alien will not pose a danger or flight risk.  § 1226(c)(2).
Section 1226(c) does not on its face limit the length of the detention it authorizes.  "In fact, by allowing
aliens to be released 'only if' the Attorney General decides that certain conditions are met, § 1226(c)
reinforces the conclusion that aliens detained under its authority are not entitled to be released under any
circumstances other than those expressly recognized by the statute.  And together with § 1226(a),
§ 1226(c) makes clear that detention of aliens within its scope must continue 'pending a decision on
whether the alien is to be removed from the United States.'"  Jennings, 583 U.S. at 303 (quoting
§ 1226(a)).

v. Kim, 538 U.S. 510, 523 (2003).  By statute, any alien who is inadmissible or deportable by reason of having committed certain enumerated criminal offenses after the alien has been released from criminal incarceration must be taken into and held in custody.  8 U.S.C. § 1226(c). In Demore, the Supreme Court held § 1226(c) does not—on its face—violate the due process rights of criminal aliens who are detained for the limited period of their removal proceedings. 538 U.S. at 513.  However, the Court left open the possibility of as-applied procedural due process challenges to § 1226(c) detention, where continued detention becomes unreasonable or unjustified.  Id. at 531–33 (Kennedy, J., concurring).

In the years since Demore, many courts construed § 1226(c) as authorizing detention only for a "reasonable" amount time, so as to avoid resolving the constitutional challenges presented by extended § 1226(c) detention.  See Sopo v. U.S. Att'y Gen., 825 F.3d 1199, 1213–14 (11th Cir. 2016) (Sopo I) (collecting cases and adopting similar construction of § 1226(c)), vacated on other grounds, 890 F.3d 952 (11th Cir. 2018).  However, in Jennings, the Supreme Court rejected this construction of § 1226(c), recognizing the statute requires mandatory detention of certain aliens until the conclusion of their removal proceedings and the provision cannot be construed to impose a "reasonableness" limitation.  583 U.S. at 298.  But, again, the Court left open the possibility of as-applied procedural due process challenges to § 1226(c) detention, particularly where the petitioner alleges the detention has become unreasonably prolonged.

To determine if a procedural due process violation has occurred, courts must determine whether a petitioner was deprived of a protected interest, and, if so, whether constitutionally adequate due process was afforded.  See Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982); Bank of Jackson Cnty. v. Cherry, 980 F.2d 1362, 1366 (11th Cir. 1993).  As for others protected by the Due Process Clause, for aliens involved in removal proceedings, "[f]reedom from

imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Rincon has plainly established a deprivation of his freedom from confinement. Therefore, to resolve Rincon's Petition, the Court must determine whether he was afforded constitutionally adequate due process.

As noted above, § 1226(c) has been held to be facially constitutional, see generally Demore, and courts have deemed detention under that provision constitutional, so long as the detention is justified and not unreasonably prolonged. Rincon does dispute whether he is validly subject to § 1226(c) detention based on his criminal history; he seems to recognize this currently is the basis for his detention. Instead, Rincon contends the detention has been unreasonably prolonged.

Courts in the Eleventh Circuit confronted with procedural due process challenges to prolonged detention under § 1226(c) have looked to Sopo I for guidance on evaluating the challenges. See Lukaj v. McAleenan, Case No. 3:19-cv-241, 2019 WL 4979745, at *6 (M.D. Fla. Oct. 8, 2019), vacated on other grounds, 2020 WL 248724 (M.D. Fla. Jan. 16, 2020); Moore v. Nielsen, No. 418CV01722, 2019 WL 2152582, at *10 (N.D. Ala. May 3, 2019). Those courts consider the reasoning of Sopo I concerning statutory construction of § 1226(c) and recognize the Supreme Court rejected the constitutional avoidance doctrine in Jennings and the Eleventh Circuit later vacated its opinion in Sopo I. Those courts also recognize the analysis in Sopo I concerning prolonged § 1226(c) detention remains persuasive and is particularly instructive when assessing the constitutionality of prolonged § 1226(c) detention. Lukaj, 2019 WL 4979745, at *6 (recognizing while "vacated opinions are void and have no legal effect[,]" "they can still have persuasive value"); Moore, 2019 WL 2152582, at *10 ("In assessing the

8

constitutional avoidance doctrine, the Eleventh Circuit affirmatively answered the due process question in [Sopo I].").  The undersigned agrees.  In applying the constitutional avoidance doctrine in Sopo I, the Eleventh Circuit construed § 1226(c) to include a limit that avoided unconstitutional application of the statute.  The same analysis is highly instructive for determining if prolonged detention under § 1226(c) does, in fact, violate a petitioner's right to procedural due process.

In Sopo I, the Eleventh Circuit explained it is appropriate to use a case-by-case approach to determine whether an alien's detention under § 1226 is reasonable (as opposed to adopting any sort of bright-line rule concerning the length of the petitioner's detention).  825 F.3d at 1215.  In conducting the case-by-case evaluation, a court should consider, among other things: (1) the amount of time the alien has been in detention without a bond hearing; (2) the cause of the protracted removal proceedings (i.e., whether the petitioner or the government has improperly delayed the proceedings); (3) whether it will be possible to remove the alien upon the issuance of a final order of removal; (4) whether the period of civil immigration detention exceeds the time the alien spent in prison for the crime that rendered the alien removable; (5) whether the facility at which the alien is civilly detained is meaningfully different from a penal institution; and (6) the likelihood the removal proceedings will conclude in the near future.  Id. at 1217–18.  The Court addresses each factor, as applied to Rincon's case.

**A.    Rincon's Detention Without a Bond Hearing**

Regarding the first factor—the length of detention without a bond hearing—the Eleventh Circuit noted § 1226(c) detention without a bond hearing is likely reasonable for up to six months but "may often become unreasonable by the one year mark, depending on the facts of the case."  Id. at 1218.  Critically, the Eleventh Circuit explained in the context of prolonged

§ 1226(c) detention, procedural due process does not require automatic release of a criminal alien once the detention is unreasonably prolonged but, instead, requires the government to afford the alien an individualized bond inquiry.  Id.

At the time of filing his Petition on February 26, 2024, Rincon had been in ICE's custody since June 2021.  And at the time of the issuance of this Report, Rincon will have been detained for more than three years' time.  On its face, it appears the duration of Rincon's detention has become unreasonable, and this factor weighs in Rincon's favor.

**B.    Delay in Proceedings**

As recounted at length in the Motion to Dismiss and supporting documentation, the majority of delays in Rincon's removal proceedings are attributable to Rincon.  Rincon has failed to cooperate with the immigration judge and his representative at every turn, resulting in much of the delay.  The Court notes, at the time Respondents filed their Motion to Dismiss, they represented that DHS intended to file an emergency motion to reconsider/remand with the BIA before the June 17, 2024 deadline.  Doc. 11 at 11.  The Court has no information regarding whether DHS did file its intended motion or the status of Rincon's removal, though it appears Rincon is still being detained.  https://locator.ice.gov/odls/#/results, search using Rincon's A-number and "Mexico," and showing Rincon is still housed at the Folkston ICE Facility (last visited Oct. 30, 2024).  But it appears DHS would not have had to file its intended motion if Rincon had been cooperative throughout the removal proceedings.  This factor weighs strongly in Respondent's favor.

**C.    Possibility of Removal**

Respondents state Rincon should be removed to Mexico as soon as possible once his removal order is final, as detainees are removed to Mexico on a regular, monthly basis.  Doc. 11

at 11–12; Doc. 11-1 at 5–6.  Rincon presents nothing to the contrary.  This factor weighs in

Respondent's favor.

### D.    Length of Civil Detention Relative to Length of Criminal Incarceration

Respondents note Rincon was sentenced to a term of 135 months (more than 11 years) in

prison and has been in ICE's detention for three years.  This factor weighs in Respondent's

favor.  Rincon points to no evidence to the contrary.

### E.    Facility Conditions

While Rincon makes vague contentions about the conditions at the ICE facility, doc. 15

at 3, he offers no evidence to indicate the conditions at the Folkston ICE Facility are materially

similar to or worse than any penal institution in which he served a criminal sentence.  I find this

factor favors Respondent.

### F.    Likelihood of Removal Proceedings Concluding in Near Future

There is nothing before the Court indicating when Rincon's removable proceedings will

conclude.  The record before the Court reveals Rincon has been ordered removed to Mexico

twice, with the most current order having been issued in February 2023.  Doc. 11-1 at 5.  Rincon

appealed the removal order, and the BIA administratively closed Rincon's case on May 16, 2024

(i.e., after he filed this Petition).  Respondents note DHS intended to file a motion to

reconsider/remand on or before June 17, 2024 (after Respondents filed their Motion to Dismiss),

id., and the Court has no further information on the status of any such motion.  Thus, I find this

factor also weighs in Rincon's favor.

On balance, the Sopo I factors indicate Rincon has not shown his due process rights have

been violated by the length of detention in ICE's custody, nor has Rincon shown he has not been

afforded the opportunity for hearings and other proceedings during his detention.  The Court

should grant Respondents' Motion to Dismiss and deny Rincon's Petition.

**II.    Rincon's Motion for Summary Judgment**

Rincon filed a Motion for Summary Judgment and asserts Respondents did not file any

response to Rincon's Response to the Motion to Dismiss.  Doc. 17 at 1.  However, motions for

summary judgment generally are not applicable to habeas corpus proceedings.  Crum v. Noe,

2018 WL 11618736, at *2 (S.D. Ala. Dec. 3, 2018) (citing McBride v. Sharpe, 25 F.3d 962 (11th

Cir. 1994), for the proposition summary judgment rules are generally inapplicable to habeas

corpus cases)).  What is more, Respondents were not required to file a reply to Rincon's

Response to the Motion to Dismiss.  See Local R. 7.6 (indicating reply briefs are at the option of

the party).  Thus, I **RECOMMEND** the Court **DENY** Rincon's Motion.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondents' Motion to

Dismiss, **DENY** Rincon's § 2241 Petition and Motion for Summary Judgment, **DIRECT** the

Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY**

Rincon *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of

today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate

Judge failed to address a contention raised in the Complaint must be included.  Failure to file

timely, written objections will bar any later challenge or review of the Magistrate Judge's factual

findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't

Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to

challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to

file timely, written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 30th day of October, 2024.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA